96 S.E.2d 667 (1957)
STATE of West Virginia
v.
John B. LA MANCA.
No. 10836.
Supreme Court of Appeals of West Virginia.
Submitted January 15, 1957.
Decided March 5, 1957.
*668 Robinson & Stump, John S. Stump, Jr., Clarksburg, for plaintiff in error.
John G. Fox, Atty. Gen., Giles D. H. Snyder, Asst. Atty. Gen., for defendant in error.
DUCKER, Judge.
John B. LaManca was convicted in the Criminal Court of Harrison County, West Virginia, of embezzlement, and from an order of the Circuit Court of Harrison County refusing a writ of error, prosecutes this writ of error in this Court.
The indictment of LaManca charges: "that John B. LaManca, on the  day of May, 1948, in the said County of Harrison, did feloniously embezzle, fraudulently convert to his own use and steal, certain United States currency of the value of Nine Hundred, Ninety-eight Dollars ($998.00) of the money and property of Sam Veltri, he, the said John B. LaManca, having then and there in his possession said United States currency, money and property by virtue of a certain office, place and employment, towit, agent for the said Sam Veltri, for the purpose of obtaining passage for Gaetano Veltri and Antonio Veltri from Italy to the United States and the admission of the said Gaetano Veltri and Antonio Veltri into the United States; against the peace and dignity of the State."
Before setting forth the facts as disclosed by the evidence, it is appropriate, for a consideration of the facts, to say that it appears the defendant relies solely upon an assignment of error based upon the denial of defendant's motion made at the close of the evidence in the case to strike the evidence of the State, and to direct the jury to return a verdict of not guilty on the grounds (a) that there is in the record a complete lack of proof of essential facts required to be proved in order to sustain a conviction on the indictment in this case, and, (b) that there is a fatal variance between the proof and the indictment. In substance, this presents only the question of whether or not the facts shown by the evidence were such as to result in a variance between the charge made and the proof adduced.
The material facts shown by the evidence are to the following effect:
In June, 1946, Sam Veltri of Clarksburg, West Virginia, engaged the defendant, John B. LaManca, as his agent to obtain the transportation of his father, Gaetano Veltri, and his brother, Antonio Veltri, from Italy, and their admission into the United States, *669 giving the defendant five hundred dollars to cover the cost of such necessary airline passage. This attempt to obtain admission of the brother failed, but the five hundred dollar deposit was not returned to Sam Veltri. However, this fact is not specified in the indictment.
On May 11, 1948, after intervening contacts between Sam Veltri and defendant were had, including a trip to Washington by defendant with Veltri, Sam Veltri gave defendant $998 to cover the cost of air transportation and landing fees for his father and brother to come from Italy to the United States. Defendant, on May 26, 1948, procured the air transportation tickets and delivered them to Sam Veltri who forwarded them to his father and brother in Italy, and the father and brother, upon their failure to use them because of their inability to obtain admission into the United States, returned the tickets to Sam Veltri. Sam Veltri, late in 1948 or early 1949, brought the airline tickets to the defendant for the purpose of having defendant procure a refund of the purchase price which refund was made in the sum of $930.65, by a check of Transcontinental and Western Air, Inc., dated January 12, 1949, payable to Clarksburg General Agency, Inc., and cashed by the latter by endorsement in the name of the latter company by John B. LaManca, Secretary-Treasurer. This money was not repaid to Sam Veltri.
In June, 1950, upon demand of Veltri, the defendant gave Veltri his promissory note payable to Veltri on or before July 1, 1950, for $1,498, which represented the original $500 paid by Veltri and the $998 subsequently paid to defendant as hereinbefore shown. The only payment made by defendant was $300 in November, 1950, the defendant having replied to Veltri upon Veltri's demand for payment that he either didn't have the money or that he had spent the money for which the note was given.
At the conclusion of the evidence, the defendant, for the reasons hereinbefore shown, moved to strike the State's evidence and to direct a verdict in favor of the defendant, and offered no evidence in his own behalf.
While the record discloses numerous other details in regard to the transactions and relations between the defendant and Veltri, we do not consider them sufficient and material to narrate them here, particularly in view of the fact that the decision of this case is not dependent upon any further facts than those which we have already set forth. Although there are specific assignments of error as to several instructions issued, we do not consider them necessary in our decision of the case because our decision resolves itself into practically the single question of whether or not there is a fatal variance between the charge made in the indictment and the proof offered by the State.
The indictment specifically charged the defendant with the embezzlement of $998 which was paid over to the defendant for the purpose of the procurement of transportation and entrance of defendant's father and brother into the United States. The defendant used the sum of $998 which was paid to him for the purpose of obtaining tickets for transportation, and after receiving such tickets, delivered them to the complaining witness, Sam Veltri, who in turn forwarded them to his father and brother in Italy. After it had developed that the father and brother of Sam Veltri could not use the tickets, they were returned directly to Sam Veltri, who then delivered the tickets to the defendant for the purpose of obtaining as a refund the money paid for them, or such amount as was refundable. The indictment dealt only with the original $998 and did not specify or deal with the $930.65 which represented the amount refunded by the airline carrier. The State claims that an agency relationship was created, if not when the $500 was paid for the purpose of procuring the transportation of his brother, Antonio, from Italy into the United States, then certainly at the time the $998 was paid for the purpose of obtaining the transportation of his father, Gaetano *670 Veltri, and his brother, Antonio Veltri, into the United States; and that such agency relationship continued until and including the time when the defendant obtained the refund from the transportation company of $930.65, covering the amount paid for transportation tickets, and consequently, the indictment should be considered good.
Whether the indictment is good under the facts, we believe depends on whether or not there was a fulfillment of the purpose for which the $998 was paid to the defendant when he purchased transportation tickets and delivered them to Sam Veltri, and whether or not an entirely new undertaking or agency was created when the tickets were re-delivered by Veltri to the defendant for the purpose of procuring the refund. Without in this proceeding commenting on or deciding any question relating to the defendant's failure or guilt in not accounting for the $930.65 representing the refund, our decision must therefore depend upon the law applicable to a fair analysis of these facts. The defendant is charged in the indictment only as to the $998 transaction, and as to which he executed and performed the trust imposed upon him, and if it is admitted, though not thoroughly proved, that the State's evidence proved that the defendant had not accounted for the $930.65, such proof is not sufficient to sustain the charge of failure to account for the $998 which he received in May of 1948, as charged in the indictment.
The State claims that there has been no variance and consequently, no error in the trial because it says that the time of the commission of the act is not material and that there was a continuing agency and consequently no variance, and furthermore, that under Code, 61-3-20, that there was a presumption of guilt after demand was made in accordance with the statute for the return by the agent of the money belonging to the principal. The cases cited and arguments made by the State would have merit if the evidence did not show that the defendant had fulfilled the requirements of his employment in regard to the $998 received by him. Did then the defendant's failure to pay over the sum of $930.65 render him guilty under the indictment for the alleged embezzling of the sum of $998? We are of the opinion that it did not.
The law in this regard is fundamental and, we might say, elementary, in that under Section 14 of Article III of the Constitution, "the accused shall be fully and plainly informed of the character and cause of the accusation," and the law is well settled that in any case in which a defendant is tried upon information or indictment, the accused must be so definitely informed of the charges against him that he may be protected against another prosecution for the same offense. While immaterial averments may be included in or omitted from indictments without affecting the validity of indictments, yet, if they are included, they may be misleading and unfair, and so prejudice the accused as to create a fatal variance. State v. Myers, 118 W.Va. 397, 190 S.E. 678; State v. Zitzelsberger, 129 W.Va. 229, 233, 39 S.E. 2d 835. While there is nothing in this indictment that is immaterial or misleading, and it is not questioned as to form, yet it does allege one thing specifically as to time and amount, and the defendant has been subjected to a trial for what we believe is an entirely different thing, namely, a different amount received by him from another source at a different time. There is no dispute as to the facts. The question is not one solely for a determination by the jury when the proof is entirely contrary to the charge contained in the indictment. In this instance it is only a question of law for the court, and such question was properly raised by the defendant's motion to strike the State's evidence and direct a verdict for the defendant, which motion, we are of the opinion, should have been sustained.
The judgments of the Criminal Court of Harrison County and the Circuit Court of *671 Harrison County are reversed, the verdict of the jury is set aside and a new trial awarded the defendant.
Judgments reversed; verdict set aside; new trial awarded.